2009 ND 87

**Merwin CARLSON, Claimant and Appellant**

v.

**WORKFORCE SAFETY & INSURANCE,**
Appellee

and

**GMR Transportation, Inc., Respondent and Appellee.**

No. 20080250.

Supreme Court of North Dakota.

May 18, 2009.

Bruce A. Schoenwald, Stefanson, Plambeck & Foss, Moorhead, MN, for claimant and appellant.

Jacqueline Sue Anderson, Special Assistant Attorney General, Fargo, N.D., for appellee.

Timothy G. Richard (argued), Serkland Law Firm, Fargo, N.D., and Richard A. Plewacki (on brief), Roetzel & Andress, L.P.A., Cleveland, OH, for respondent and appellee.

SANDSTROM, Justice.

[¶ 1] Merwin Carlson appeals from a district court judgment affirming a decision by Workforce Safety & Insurance ("WSI"), which reconsidered its earlier decision granting Carlson workers' compensation benefits and subsequently denied him benefits after WSI determined he was an independent contractor and was not an employee of GMR Transportation, Inc. Carlson argues WSI's decision is void, because GMR's attorneys were not authorized to practice law in North Dakota during WSI's reconsideration of his claim. Carlson also argues WSI's procedure for terminating his benefits violated his due process right to ongoing disability benefits and WSI erred in deciding he was an independent contractor. We hold WSI's decision is void, because GMR's attorneys were not authorized to practice law in North Dakota during the reconsideration of Carlson's claim. We reverse and remand for proceedings consistent with this opinion.

I

[¶ 2] On July 8, 2005, Carlson was injured in a traffic accident while hauling freight as an over-the-road trucker under a contractual agreement with GMR. On July 5, 2006, Carlson filed a claim for workers' compensation benefits with WSI, identifying GMR as his employer. GMR thereafter submitted "employer" information to WSI on a form provided by WSI, stating Carlson was an independent contractor and not a GMR employee. On October 3, 2006, WSI issued a notice of decision finding Carlson was a GMR employee when the accident occurred. WSI awarded Carlson benefits based on its finding that his average weekly wage was $252.

[¶ 3] On October 13, 2006, GMR's president notified WSI that Richard Plewacki and Adrienne Stemen of Roetzel & Andress, LPA, in Cleveland, Ohio, would serve as GMR's "special counsel" for Carlson's claim. Plewacki and Stemen are attorneys licensed to practice law in Ohio, and they are not licensed to practice law in North Dakota and were not then admitted pro hac vice ("for this one particular occasion") for Carlson's claim under Admission to Practice R. 3. On October 26, 2006, Stemen, on behalf of GMR, request-

ed reconsideration of WSI's October 3, 2006, decision and also requested until November 17, 2006, to provide documentation to support the request for reconsideration. WSI granted GMR's request for an extension of time to submit supporting documentation. On November 10, 2006, Stemen advised WSI that, on behalf of Roetzel & Andress, she was GMR's authorized legal representative for Carlson's claim. On November 16, 2006, GMR, through Stemen and Plewacki, submitted a legal brief and additional information on GMR's request for reconsideration, arguing Carlson was an independent contractor for purposes of receiving workers' compensation benefits.

[¶ 4] On January 4, 2007, on the basis of additional information submitted by GMR, WSI issued a notice of decision, reversing its October 3, 2006, decision and denying Carlson benefits. WSI concluded Carlson was an independent contractor and ordered him to refund benefits already paid. Carlson requested reconsideration, arguing he was a GMR employee and seeking copies of the additional information submitted by GMR. Carlson thereafter claimed WSI improperly accepted GMR's request for reconsideration, because the request and supporting documents were submitted on behalf of a corporate entity by attorneys not licensed to practice law in North Dakota. Carlson also claimed WSI's pretermination procedures deprived him of due process and WSI's January 4, 2007, decision failed to comply with the 60–day limitation of N.D.C.C. § 65–01–16(5) for reversing the October 3, 2006, decision.

[¶ 5] On February 20, 2007, WSI issued an order finding Carlson was an independent contractor and requiring him to repay previously paid disability and medical benefits. WSI concluded GMR had established Carlson was an independent contractor under N.D. Admin. Code § 92–01–02–49, and Carlson was not entitled to workers' compensation benefits.

[¶ 6] Carlson requested a rehearing under N.D.C.C. § 65–01–16(7). In April 2007, an attorney licensed to practice law in North Dakota filed a notice of appearance on behalf of GMR with the office of administrative hearings and filed motions for pro hac vice admission for Plewacki and Stemen under Admission to Practice R. 3. Carlson resisted the motions for pro hac vice admission. On May 16, 2007, an administrative law judge ("ALJ") granted the motions for pro hac vice admission of Plewacki and Stemen for Carlson's claim.

[¶ 7] On September 17, 2007, the ALJ issued a decision on several prehearing motions. The ALJ rejected Carlson's objection to GMR's request for reconsideration by attorneys not licensed to practice law in North Dakota, stating the initial request for reconsideration was timely and was a service that could be performed by a non-lawyer under N.D.R. Prof. Conduct 5.5(b)(5). The ALJ stated the November 16, 2006, letter brief "clearly required the application of legal knowledge and technique, and may have constituted the practice of law." The ALJ said assuming the letter brief constituted the unauthorized practice of law, "the consequence on the underlying informal proceeding before WSI and the impact on the current adjudicative proceeding before the ALJ is not obvious." The ALJ explained:

It is not clear whether a corporation must have representation by counsel during preliminary, informal proceedings before an administrative agency. If so required, at worst one would deem the assumed foul, the submission of the letter brief, as void. In any event, WSI still had an obligation to review GMR's timely and sufficient request for reconsideration. Furthermore, WSI has the

authority to, at any time, review any award. N.D.C.C. § 65–05–04. To what extent WSI relied on the letter brief of Mr. Plewacki and Ms. Stemen, as opposed to the fact documents supplied in support of the request for review, such as the independent contractor service agreement, custom transaction detail report, safety training materials, payment records, and the like, is pure speculation. WSI issued a decision, and later an order, it had the obligation and authority to issue notwithstanding the submission of the letter brief by Mr. Plewacki and Ms. Stemen. Mr. Carlson has subsequently triggered the formal review process.

In sum, notwithstanding that Mr. Plewacki, et al., *may* have engaged in the unauthorized practice of law, it does not follow that the order by WSI denying the claim is faulty. It appears appropriate for the issue of whether Mr. Carlson is an employee or independent contractor to proceed to hearing and be addressed on the merits.

The ALJ also rejected Carlson's claim that he was not provided adequate pretermination notice for the termination of his benefits in January 2007 and further explained that reinstatement of benefits for a violation of the 60–day limit in N.D.C.C. § 65–01–16(5) was not appropriate because mandamus was the appropriate remedy.

[¶ 8] After an evidentiary hearing on the merits of Carlson's claim, the ALJ recommended finding that Carlson was an independent contractor and was not entitled to workers' compensation benefits as an employee of GMR. WSI adopted the ALJ's recommendation, and the district court affirmed WSI's decision.

[¶ 9] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06, 28–32–42, and 65–10–01. Carlson's appeal is timely under N.D.R.App.P. 4(a) and N.D.C.C. § 28–32–49. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–32–49.

## II

[¶ 10] Courts exercise a limited review in appeals from administrative agencies under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Tverberg v. Workforce Safety and Ins.*, 2006 ND 229, ¶ 7, 723 N.W.2d 676. Under N.D.C.C. § 28–32–46, a district court must affirm an administrative agency order unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

On appeal to this Court from a district court's decision in an administrative appeal, we review the agency order in the same manner. N.D.C.C. § 28–32–49.

[¶ 11] We exercise restraint in deciding whether an agency's findings of fact are supported by a preponderance of the evidence, and we do not make independent findings or substitute our judgment for that of the agency. *Reopelle v. Workforce Safety and Ins.*, 2008 ND 98, ¶ 9, 748 N.W.2d 722; *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979). In reviewing an agency's findings of fact, we determine only whether a reasoning mind reasonably could have concluded that the agency's factual conclusions were proved by the weight of the evidence from the entire record. *Reopelle*, at ¶ 9; *Power Fuels*, at 220.

### III

[¶ 12] Carlson argues WSI erred in deciding GMR's request for reconsideration, because GMR's request was made by attorneys not authorized to practice law in North Dakota. He argues the nonresident attorneys' actions on behalf of a corporate entity constituted the unauthorized practice of law in North Dakota and those attorneys failed to apply for pro hac vice admission within 45 days of the request for reconsideration as required by Admission to Practice R. 3. Carlson claims GMR's request for reconsideration is void, and he asserts the initial order awarding him benefits should be reinstated as a final unappealable order.

[¶ 13] This issue revolves around a corporate entity's employment of attorneys not licensed to practice law in North Dakota in the context of the procedure for WSI decisions in N.D.C.C. § 65–01–16 and the standards for the unauthorized practice of law under N.D.R. Prof. Conduct 5.5 and for pro hac vice admission under Admission to Practice R. 3. "Whether a corporation can be represented by a non-attorney agent in a legal proceeding and what happens to the matter when a corpo-

ration is not represented by an attorney are questions of law ... [which] are fully reviewable on appeal." *Wetzel v. Schlenvogt*, 2005 ND 190, ¶ 10, 705 N.W.2d 836.

[¶ 14] Under WSI's statutory procedures for rendering decisions on claims for benefits, WSI may conduct a "hearing" on claims within its jurisdiction by "informal internal review" of the information in the record and issue a "notice of decision" by "informal internal review." N.D.C.C. § 65–01–16(2) and (3). *See Steele v. North Dakota Workmen's Comp. Bur.*, 273 N.W.2d 692, 701 (N.D.1978) (authorizing informal hearing for initial determination provided agency affords claimant formal evidentiary hearing upon request if material facts are disputed). Under N.D.C.C. § 65–01–16(4), a party has 30 days from a "notice of decision" by "informal internal review" to file a "written request for reconsideration," which must state the alleged errors in the notice of decision and the relief sought and may be accompanied by additional evidence. WSI shall consider a "request for reconsideration" by "informal internal review" of the record, and "[a]bsent a timely and sufficient request for reconsideration, the notice of decision is final and may not be reheard or appealed." N.D.C.C. § 65–01–16(4). WSI has 60 days after receiving a request for reconsideration to serve a "notice of decision" reversing the previous decision, or an "administrative order" with findings of fact and conclusions of law. N.D.C.C. § 65–01–16(5). WSI also may issue an administrative order for any decision made by informal internal review without first issuing a notice of decision and receiving a request for reconsideration. *Id.* A party has 30 days after service of an administrative order to file a written request for rehearing, which triggers the requirements for a formal hearing under N.D.C.C. ch. 28–32. N.D.C.C. § 65–01–16(7) and

(8). *See Frank v. Traynor,* 1999 ND 183, ¶ 11, 600 N.W.2d 516; *Steele,* at 701. "Absent a timely and sufficient request for rehearing, the administrative order is final and may not be reheard or appealed." N.D.C.C. § 65–01–16(7). For rehearings, WSI was authorized to arrange for the designation of hearing officers to conduct the rehearing and to issue recommended decisions. N.D.C.C. § 65–01–16(8). *See* N.D.C.C. 65–02–22.1 (initiated measure approved November 4, 2008, and providing for designation of administrative law judges from office of administrative hearings for evidentiary hearings and for issuance of final findings of fact, conclusions of law, and orders). Under N.D.C.C. § 65–01–16(11), "[a]ny notice of decision, administrative order, or posthearing administrative order is subject to review and reopening under [N.D.C.C. § ] 65–05–04."

[¶ 15] Here, on October 3, 2006, WSI initially issued a "notice of decision" awarding Carlson benefits after conducting a "hearing" by "informal internal review" under N.D.C.C. § 65–01–16(2) and (3). On October 13, 2006, GMR's president notified WSI that Plewacki and Stemen, attorneys licensed to practice law in Ohio and not licensed to practice law in North Dakota, would serve as GMR's "special counsel" for Carlson's claim. On October 26, 2006, Stemen, on behalf of GMR, requested "reconsideration" of Carlson's claim under N.D.C.C. § 65–01–16(4) and also requested until November 17, 2006, to provide documentation to support the request for reconsideration. WSI granted the request for an extension of time to submit supporting documentation. On November 11, 2006, Stemen advised WSI that, on behalf of Roetzel & Andress, she was GMR's authorized legal representative for Carlson's claim. On November 16, 2006, GMR, through Stemen and Plewacki, submitted a legal brief and additional information in support of GMR's request for reconsidera-

tion. On January 4, 2007, WSI issued a "notice of decision" under N.D.C.C. § 65–01–16(5), reversing its prior decision granting Carlson benefits. Carlson thereafter requested reconsideration, which resulted in a February 20, 2007, "administrative order" and Carlson's subsequent "request for rehearing" under N.D.C.C. § 65–01–16(7) and the requirements of N.D.C.C. ch. 28–32. By letter dated April 4, 2007, an attorney licensed to practice law in North Dakota filed a notice of appearance on behalf of GMR, as well as motions for pro hac vice admission of Plewacki and Stemen under Admission to Practice R. 3. The ALJ granted the motions for pro hac vice admission in May 2007, and Carlson's claim proceeded to an evidentiary hearing in September 2007.

[¶ 16] The record reflects that from October 2006 through April 4, 2007, when an attorney licensed to practice law in North Dakota filed a notice of appearance on behalf of GMR, GMR was represented in the administrative proceedings for Carlson's claim by attorneys who were not authorized to practice law in North Dakota, and the issue is whether that representation constitutes the unauthorized practice of law.

[¶ 17] Under N.D. Const. art. VI, § 3, unless otherwise provided by law, this Court has authority "to promulgate rules and regulations for the admission to practice, conduct, disciplining, and disbarment of attorneys at law." Section 27–11–01, N.D.C.C., prohibits the unauthorized practice of law in North Dakota, and provides:

> Except as otherwise provided by state law or supreme court rule, a person may not practice law, act as an attorney or counselor at law in this state, or commence, conduct, or defend in any court of record of this state, any action or proceeding in which the person is not a

party concerned ... unless that person has:

1. Secured from the supreme court a certificate of admission to the bar of this state; and

2. Secured an annual license therefor from the state board of law examiners.

Any person who violates this section is guilty of a class A misdemeanor.

[¶ 18] In *Ranta v. McCarney*, 391 N.W.2d 161, 163 (N.D.1986) (quoting *Cain v. Merchants Nat'l Bank & Trust Co.*, 66 N.D. 746, 752, 268 N.W. 719, 722 (1936)), this Court defined the "practice of law" to include a wide variety of services besides proceedings in court:

"... 'Practice of law under modern conditions consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court. It embraces conveyancing, the giving of legal advice on a large variety of subjects, and the preparation and execution of legal instruments covering an extensive field of business and trust relations and other affairs. Although these transactions may have no direct connection with court proceedings, they are always subject to become involved in litigation. They require in many aspects a high degree of legal skill, a wide experience with men and affairs, and great capacity for adaptation to difficult and complex situations. These 'customary functions of an attorney or counsellor at law' * * * bear an intimate relation to the administration of justice by the courts. No valid distinction, ... can be drawn between that part which involves appearance in court and that part which involves advice and drafting of instruments in his office. The work of the office lawyer is the ground work for future possible contests in courts. It has profound effect on the whole scheme of the administration of justice. It is performed with that possibility in mind, and otherwise would hardly be needed.* * * It is of importance to the welfare of the public that these manifold customary functions be performed by persons possessed of adequate learning and skill, of sound moral character, and acting at all times under the heavy trust obligation to clients which rests upon all attorneys. The underlying reasons which prevent corporations, associations and individuals other than members of the bar from appearing before the courts apply with equal force to the performance of these customary functions of attorneys and counsellors at law outside of courts.' ..."

[¶ 19] In *Ranta*, at 164, this Court held that an attorney licensed to practice law in Minnesota and not licensed to practice law in North Dakota could not recover attorney fees for legal work performed in North Dakota. In part in response to *Ranta*, the North Dakota State Bar Association authorized a task force to study the multi-jurisdictional practice of law. *See Proceedings of the One Hundred First Annual Meeting of the North Dakota State Bar Association*, 77 N.D.L.Rev. 644, 655–56 (2001) (Authorizing Multi–Jurisdictional Task Force); *Proceedings of the One Hundred Third Annual Meeting of the North Dakota State Bar Association*, 78 N.D.L.Rev. 647, 669–75 (2002) (Approving Report of the Multi–Jurisdictional Task Force). As a result of that study and further study by the Joint Committee on Attorney Standards, this Court adopted amendments to N.D.R. Prof. Conduct 5.5 and 8.5 and Admission to Practice R. 3, effective March 1, 2005.

[¶ 20] Rule 5.5, N.D.R. Prof. Conduct, deals with the unauthorized practice of law in this State and, in relevant part, provides "safe harbors" from the unauthorized prac-

tice of law for attorneys admitted in another jurisdiction and not in this State who temporarily provide legal services in this State:

> (b) A lawyer admitted to practice in another jurisdiction and not in this jurisdiction who performs legal services in this jurisdiction on a temporary basis does not engage in the unauthorized practice of law in this jurisdiction when:

> . . . .

>> (3) with respect to matters for which registration or pro hac vice admission is available under Admission to Practice R.3, the lawyer is authorized to represent a client or is preparing for a matter in which the lawyer reasonably expects to be so authorized;

>> . . . .

>> (5) the lawyer performs a service that may be performed by a person without a license to practice law or without other authorization from a federal, state or local governmental body.

[¶ 21] The Comment to N.D.R. Prof. Conduct 5.5(b) explains those "safe harbors" for out-of-state lawyers who temporarily perform legal services in North Dakota:

> ■ Paragraph (b)(3) requires out-of-state lawyers to be admitted pro hac vice under Admission to Practice R.3 to appear in all matters pending in a tribunal or administrative agency in this state. This Rule provides a temporary safe harbor to a lawyer acting on a client's behalf in preparatory matters before pro hac vice admission, so long as the lawyer reasonably expects to be so admitted. Such preparatory work might include factual investigations and discovery in connection with litigation or an administrative proceeding where the lawyer reasonably expects to be admitted pro hac vice.

> . . . .

■ Paragraph (b)(5) allows an out-of-state lawyer to perform services that a person who is not a lawyer may perform without a law license or other authorization from a federal, state, or local governmental body, e.g., in private alternative dispute resolution contexts, a non-lawyer may serve as a mediator or arbitrator. In some administrative proceedings, a non-lawyer is permitted by law to appear on behalf of a party. The Rule assumes that the public is adequately protected in these instances by the overarching provisions of Rule 8.5, which subjects all lawyers performing any services in this jurisdiction to the Rules of Professional Conduct. If, for example, an out-of-state lawyer performing as a neutral engages in conduct in violation of these Rules, the lawyer could be disciplined for the misconduct, even if serving as the neutral was not the unauthorized practice of law under this Rule. It should be noted that whereas an out-of-state lawyer who represents a client in ADR proceedings pending in another jurisdiction would be covered by the safe harbor in this Rule, an out-of-state lawyer who represents a client in an ADR proceeding in North Dakota must register under Admission to Practice R.3. See paragraph (b)(3).

[¶ 22] The interpretation of rules of professional conduct, like the interpretation of statutes, is a question of law. *In re Disciplinary Action Against McKechnie*, 2003 ND 22, ¶ 15, 656 N.W.2d 661. When we interpret court rules, we apply canons of statutory construction and look at the language of the rule first to determine the meaning. *Olsrud v. Bismarck–Mandan Orchestral Ass'n*, 2007 ND 91, ¶ 12, 733 N.W.2d 256. Words are given their plain, ordinary, and commonly understood meaning. *Id.* Rules are con-

strued as a whole, giving meaning to each word and phrase, if possible. *Id.*

[¶ 23] As relevant to this case, the plain language of N.D.R. Prof. Conduct 5.5(b)(3) and (5) provides safe harbors from the unauthorized practice of law for lawyers admitted to practice law in another jurisdiction and not in North Dakota who temporarily perform legal services in North Dakota if: (1) pro hac vice admission is available under Admission to Practice R. 3 and the lawyer is authorized to represent a client, or is preparing for a matter in which the lawyer reasonably expects to be authorized; or (2) the lawyer performs a service that may be performed by a person without a license to practice law.

[¶ 24] GMR and WSI claim that Stemen's request for reconsideration on behalf of GMR is not the unauthorized practice of law under N.D.R. Prof. Conduct 5.5(b)(5), because the request could have been filed by a person without a license to practice law.

[¶ 25] Under N.D.C.C. § 65-01-16(4), a party's request for reconsideration "must state the alleged errors in the [prior] decision and the relief sought." That statute contemplates that a request for consideration requires the preparation of a document with a statement of alleged errors in the prior decision, which necessarily requires the application of legal skill and knowledge to the facts of the case. Under that statute, a request for reconsideration requires more than providing information on a claim form provided by WSI and, contrary to GMR's assertion, is not a "purely mechanical service that could have been performed by a non-lawyer." *See Lukas v. Bar Ass'n,* 35 Md.App. 442, 371 A.2d 669, 673 (1977) (completing forms supplied by Workmen's Compensation Commission does not require licensed attorney); *Goodman v. Beall,* 130 Ohio St.

427, 200 N.E. 470, 471–73 (1936) (preparing and presenting claims on forms furnished by commissioner do not constitute practice of law); *Shortz v. Farrell,* 327 Pa. 81, 193 A. 20, 24–25 (1937) (nonattorney representative's preparation and filing of claim on form prepared by agency do not constitute practice of law); *West Virginia State Bar v. Earley,* 144 W.Va. 504, 109 S.E.2d 420, 434 (1959) (completing blank forms prepared and furnished by compensation commissioner does not constitute practice of law). We conclude that the preparation of a request for reconsideration under N.D.C.C. § 65-01-16(4) with the statement of the alleged errors in the prior decision requires the application of legal skill and knowledge to the facts of the case and constitutes the practice of law under *Ranta. See Strong v. Gilster Mary Lee Corp.,* 23 S.W.3d 234, 239 (Mo.Ct.App. 2000) (preparing and filing application for review of workers compensation claim constitute practice of law).

[¶ 26] Although N.D.C.C. § 65-01-16(4) says a "party" may file the request for reconsideration and a party generally may file the request on its own behalf without the assistance of an attorney, GMR is a corporation and is the "party" in this case. *See Reed v. Labor and Indus. Relations Comm'n,* 789 S.W.2d 19, 20–21 (Mo.1990) (discussing statute allowing "party" to file request for review and holding corporate party must act through licensed attorney; corporate employer's actions in allowing non-attorney employee to file notice of appeal and application for review constituted unauthorized practice of law). "A corporation is an artificial person that must act through its agents." *Wetzel,* 2005 ND 190, ¶ 11, 705 N.W.2d 836. We have "firmly adhered to the common law rule that a corporation may not be represented by a non-attorney agent in a legal proceeding."

*Id.* "Just as one unlicensed natural person may not act as an attorney for another natural person in his or her cause, an unlicensed natural person cannot attorn for an artificial person, such as a corporation." *Id.* The proper remedy when a corporation is represented by a non-attorney agent is to dismiss the action and strike as void all legal documents signed and filed by the non-attorney. *Id.* at ¶¶ 12–13. *See also Strong*, 23 S.W.3d at 241–42. In *Wetzel*, at ¶ 13, we held "that when a case is commenced on behalf of a corporation by a non-attorney agent, the case and all documents signed by the non-attorney agent are void from the beginning." Under *Wetzel*, we conclude Stemen's request for reconsideration on behalf of a corporate entity such as GMR was not conduct that could be performed by a non-lawyer and is not subject to the safe harbor of N.D.R. Prof. Conduct 5.5(b)(5).

[¶ 27] GMR and WSI also claim Stemen and Plewacki are subject to the safe harbor of N.D.R. Prof. Conduct 5.5(b)(3) because pro hac vice admission is available under Admission to Practice R. 3 and Stemen and Plewacki were doing prepatory work for a matter for which they reasonably expected to be authorized. GMR and WSI claim the services provided in GMR's request for reconsideration before Carlson requested an evidentiary hearing were prepatory work for a matter in which Stemen and Plewacki reasonably expected to be authorized.

[¶ 28] Rule 5.5(b)(3), N.D.R. Prof. Conduct, provides a safe harbor for lawyers who provide legal services on a temporary basis on matters for which pro hac vice admission is available if the lawyer is preparing for a matter in which the lawyer reasonably expects to be authorized to represent a client. Rule 3, Admission to Practice R., deals with pro hac vice admission of nonresident attorneys admitted and licensed to practice law in other states, but not licensed in North Dakota:

A. Pro Hac Vice Admission. Pro hac vice admission is required for all nonresident attorneys admitted and licensed to practice law in another state or the District of Columbia, but not licensed in North Dakota, and who engage in the practice of law in this state by appearing, either in person, by signing pleadings, or by being designated as counsel in actions filed in state courts, administrative agencies, or tribunals.

1. Filing Requirements.

a. A nonresident attorney may occasionally be permitted to appear as counsel in an action in a trial court of this state or before an administrative agency or tribunal in this state if the attorney first:

(1) designates an associate attorney admitted and licensed to practice law in this state;

(2) files a motion requesting permission to appear and an affidavit in support of the motion with the clerk of the trial court, the hearing officer of the administrative agency matter, or the presiding officer of the tribunal;

(3) files a copy of the motion and affidavit with the State Board of Law Examiners at the same time they are filed with the appropriate individual identified in Section A(1)(a)(2);

(4) remits to the State Board of Law Examiners the fee required for an attorney who has been licensed in this state for five years or more or certifies the attorney has paid the fee to the State Board of Law Examiners during that calendar year; and

(5) obtains permission from the court, hearing officer, or presiding officer.

. . . .

2. The motion requesting permission to appear must be filed no later than 45 days after service of the pleading, motion, or other paper.

[¶ 29] The Explanatory Note to Admission to Practice R. 3 states that the rule provides for pro hac vice admission for all adjudicative proceedings and is not limited to state court actions. Moreover, the rule is not limited to an actual physical appearance or presence in a court action; rather, "[a]n attorney also makes an appearance by signing or otherwise being designated as counsel on a pleading, motion, or other paper served or filed in an action venued in a North Dakota state court, administrative agency, or other tribunal." *Id.*

[¶ 30] Under the plain language of Admission to Practice R. 3(A), pro hac vice admission is required for all nonresident attorneys admitted to practice law in another state and not licensed in North Dakota who engage in the practice of law by appearing, either in person, by signing pleadings, or by being designated as counsel in actions filed in administrative agencies. Here, on October 13, 2006, GMR's president notified WSI that Plewacki and Stemen would serve as GMR's special counsel for Carlson's claim; on October 26, 2006, Stemen, on behalf of GMR, requested reconsideration of Carlson's claim; on November 11, 2006, Stemen advised WSI that, on behalf of Roetzel & Andress, she was GMR's authorized representative for Carlson's claim; and on November 16, 2006, Stemen and Plewacki submitted a legal brief and documents in support of GMR's request for reconsideration.

[¶ 31] Under the plain language of Admission to Practice R. 3, pro hac vice admission for Plewacki and Stemen was required because they prepared a request for reconsideration, were designated as counsel for Carlson's claim, and filed

a legal brief in the administrative proceeding. Although N.D.R. Prof. Conduct 5.5(b)(3) provided Plewacki and Stemen with a safe harbor to appear in prepatory matters before pro hac vice admission so long as they reasonably expected to be authorized to be admitted pro hac vice, we decline to equate the request for reconsideration and the informal internal procedures before WSI to prepatory work. The definition of the practice of law includes a wide variety of services besides formal administrative proceedings and involves more than providing legal services in an adjudicatory proceeding in an administrative agency. *See Strong*, 23 S.W.3d at 239 (preparing and filing application for review before Commission as well as appearing on claimant's behalf at hearing constitute practice of law). Rather, Admission to Practice R. 3, when read together with N.D.R. Prof. Conduct 5.5, plainly says pro hac vice admission is required for nonresident attorneys who engage in the practice of law by appearing, either in person, by signing pleadings, or by being designated as counsel in actions filed in administrative agencies. That language is not limited to formal adjudicatory proceedings.

[¶ 32] The plain language of Admission to Practice R. 3(A)(1) allows nonresident attorneys to occasionally appear in an action before an administrative agency if the attorney first designates an associate attorney licensed in North Dakota, files a motion for permission to appear and an affidavit with the hearing officer of the administrative matter, files a copy of the motion and the affidavit with the State Board of Law Examiners, remits the required fee to the State Board of Law Examiners, and obtains permission from the hearing officer. A motion requesting permission to appear must be filed no later than 45 days after the service of the pleading, motion, or other paper. Admission to

Practice R. 3(A)(2). Nothing in the plain language of Rule 3 limits the 45-day period to adjudicatory proceedings. Rather, the language of Admission to Practice R. 3(A) refers to "actions filed in . . . administrative agencies;" "an action . . . before an administrative agency;" and "the hearing officer of the administrative agency matter." *See Disciplinary Bd. v. Stensland,* 2009 ND 77, ¶¶ 11–12, 764 N.W.2d 438 (pending matter in disciplinary rules construed to apply to lawyers with litigation and non-litigation practices; pending matter includes before case filed and service of process achieved).

[¶ 33] Although GMR claims a hearing officer from the office of administrative hearings was not designated in this WSI proceeding until April 2007, N.D.C.C. § 28–32–01(5) defines a "hearing officer" to include any agency head when presiding in an administrative proceeding, or any other person duly assigned, appointed, or designated to preside in an administrative proceeding. The definition of hearing officer is not limited to an ALJ from the office of administrative hearings. There is nothing in this record to show GMR's nonresident attorneys associated with local counsel or filed motions for pro hac vice admission until April 2007, which is more than 45 days after GMR filed the request for reconsideration and a legal brief in October and November 2006.

[¶ 34] When our rules for the unauthorized practice of law and for pro hac vice admission are construed together in the context of proceedings before WSI and the requirement that a corporation may not be represented by a non-attorney agent in a legal proceeding, we conclude GMR's nonresident attorneys' activities in making a request for reconsideration, filing a legal brief, and being designated as counsel in the WSI proceeding were not protected by the safe harbor provisions of N.D.R. Prof. Conduct 5.5(b). GMR's non-resident attorneys were required to file a motion for pro hac vice admission under Admission to Practice R. 3(A) within 45 days of their appearance in this agency proceeding. Because GMR's nonresident attorneys failed to timely comply with the requirements for pro hac vice admission, we conclude GMR's request for reconsideration by its non-attorney agents was void. *See Wetzel,* 2005 ND 190, ¶¶ 12–13, 705 N.W.2d 836; *Strong,* 23 S.W.3d at 241–42.

[¶ 35] Under N.D.C.C. § 65–01–16(4), GMR failed to file a timely and sufficient request for reconsideration, and WSI's October 3, 2006, notice of decision is final and may not be reheard or appealed. Although WSI nevertheless claims it could review Carlson's status on its own motion under its continuing jurisdiction, WSI has not purported to act under its continuing jurisdiction, and any discussion of WSI's authority under its continuing jurisdiction would be advisory. *See State v. Hansen,* 2006 ND 139, ¶ 7, 717 N.W.2d 541 (stating Supreme Court does not render advisory opinions).

[¶ 36] We hold WSI erred in considering GMR's request for reconsideration. Because of our resolution of this issue, we need not address Carlson's arguments that WSI's procedure for terminating his benefits violated his due process right to ongoing disability benefits and that WSI erred in deciding he was an independent contractor. Because of WSI's disposition of Carlson's employment status, WSI did not address his argument that WSI erred in calculating his average weekly wage. Accordingly, we remand for further proceedings for calculation of Carlson's average weekly wage.

IV

[¶ 37] We reverse the district court judgment and remand for further proceedings.

[¶ 38] GERALD W. VANDE WALLE, C.J., BRUCE A. ROMANICK, D.J., DANIEL J. CROTHERS and MARY MUEHLEN MARING, JJ.

[¶ 39] The Honorable BRUCE A. ROMANICK, D.J., sitting in place of Kapsner, J., disqualified.